UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GRACE SHERK, individually and on behalf of all others similar situated,<br><br>Plaintiff,<br><br>v.<br><br>AUDIBLE, INC.,<br><br>Defendant. | No. 2:25-cv-01797<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Grace Sherk ("Plaintiff"), on behalf of herself and others similarly situated, brings this Complaint against defendant Audible, Inc. ("Audible" or "Defendant"). On the basis of personal knowledge, information and belief, and investigation of counsel, Plaintiff alleges as follows:

**INTRODUCTION**

1. Audible is a wholly owned subsidiary of Amazon.com, Inc. ("Amazon"). Audible provides access to digital audiobooks and other spoken audio content. Customers can purchase individual titles from Audible, or they can sign up for a membership plan for a monthly subscription fee.

2. When customers deliberately sign up for an Audible membership, they typically must provide personal and billing information to Audible at the outset. However, Audible was able to enroll and charge Amazon's existing customers for an unknown, unwanted, and unused monthly Audible membership by using personal information and payment methods already on file with Amazon without the customers directly providing any information to Audible or even knowing that Audible had enrolled them in an Audible membership ("Nonconsensual

Enrollment").

3. Audible made it exceedingly difficult to discover and/or cancel the Nonconsensual Enrollment. Audible also limited refunds of continuous, monthly charges for Nonconsensual Enrollment. As a result, Audible obtained monies from existing Amazon customers who paid monthly fees to Audible for services that they did not know about, did not want, and never used ("Nonconsensual Enrollees").

4. For years, Audible knew or should have known that a significant percentage of its subscription of existing Amazon customers in an Audible membership were Nonconsensual Enrollments. Audible knew or should have known Nonconsensual Enrollees never intended to enroll in an Audible membership and, in fact, never used Audible's subscription services. Audible nonetheless took no corrective measures to prevent or mitigate Nonconsensual Enrollment because Nonconsensual Enrollment comprised a significant source of enrollment and revenue for Audible.

5. Under these circumstances, Audible's retention of monies from Nonconsensual Enrollees constitutes unjust enrichment under New Jersey and New York law.

## PARTIES

6. Plaintiff Sherk is a citizen of Eden, New York.

7. Defendant Audible is headquartered in Newark, New Jersey.

## JURISDICTION AND VENUE

8. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

9. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

10. This court has personal jurisdiction over Audible because it is headquartered in

this District, and it conducts and transacts business within the District.

11. Venue is proper because a substantial part of the events giving rise to the claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

12. Amazon account holders must provide to Amazon a payment method to be maintained on file with Amazon, including credit cards, debit cards, and bank accounts. One payment method must be selected as the customer's "default" payment method, and that default method allows Amazon to charge that method for any purchases made by Amazon customers through Amazon's website or app.

13. Audible has its own Audible branded website and app through which consumers can purchase goods and services directly from Audible.

14. Audible targeted Amazon account holders for enrollment in a subscription to an Audible membership through a process that was not clear to these consumers. Many Amazon account holders, including Plaintiff, had no idea that they were enrolled in a paid membership to Audible or knew of Audible's relationship to Amazon until they later saw the monthly charges from Audible on their payment method stored with Amazon.

15. Audible did not adequately disclose Nonconsensual Enrollment in a monthly Audible membership. Nonconsensual Enrollees did not receive clear and conspicuous written materials from Audible confirming enrollment or notifying them of monthly charges.

16. Audible made it difficult for Nonconsensual Enrollees to unsubscribe, and Audible often continued to charge Nonconsensual Enrollees across the various payment methods on file in their Amazon account even when Nonconsensual Enrollees tried to unsubscribe.

17. There have been thousands of complaints about Audible's charges for

Nonconsensual Enrollment.

18. On Amazon's forum, Patricia G. stated:

I was charged $14.95 audible charge to my checking account. It is called a gold membership order number. I have never authorized this charge, plus I never signed up for this membership plus the address is incorrect.

You tried to charge me before on a credit card and I finally had all cancelled and removed then I removed the card it was charged on

Now you went to my checking account and charged me $14.95 I have never signed up for this membership and the order number. Please cancel this order and remove me permanently from this membership I have since wiped and removed all my credit cards and banking accounts from this system. This is the second time this has been done. I gave no authorization for a, one time click payment, for my accounts to be charged

Please respond Thank you

https://www.amazonforum.com/s/question/0D54P00007Ph1BJ/i-have-a-question-about-an-audible-charge-on-my-account)

19. On Reddit, there are numerous postings about Nonconsensual Enrollment, including:

I renewed my prime with a trial because I let it go for awhile to save some money. A few days later audible is charging me 16.99... I didn't sign back up for audible or anything. Is this something automatic when you sign up prime?

20. The following post is also on Reddit:

I have never signed up or even been to their website but had a withdraw from my bank account for a month of audible. I called audible and my bank, they returned my money in 3 days. I don't know how they got my card numbers but I let it go and forgot all about it. My Mother in law called me today and she is also being charged monthly for a subscription to audible that she has never heard of. I'm just curious if anyone else has this issue. When I googled it I found that this is common for this company to do. I would just like to know how they manage to get my card information, wish and Amazon are the only places that have my card info.

21. On Sitejabber, a leading online destination for customer ratings and reviews of businesses, there are hundreds of reviews warning consumers about Audible's unauthorized

charges.

22. Jane P. wrote on March 13, 2021:

I had an account on amazon prime to watch movies and cancelled it in July 2020, then I noticed I kept getting emails from amazon audible and thought nothing of it until I checked my credit card account and found they had been charging me for this service since December 2020 and a few more payment transactions in 2021 for a subscription I never signed up for. I have all the emails to show that I cancelled amazon in July 2020 yet how could a company take your details and sign you up to a service that you did NOT authorize! It is illegal.

23. Linoel L. wrote on November 3, 2020:

I've never used audible, never logged in, never bought anything from them. I did the Amazon Prime free trial tho, and for some reason these guys charged my credit card $16.18. STAY AWAY

24. Michael K. wrote on March 7, 2020:

I do not have an audible account but was charged for a monthly subscription. Audible claimed my credit card was a default backup credit card because my wife had used that credit card for a purchase on Amazon a year ago. Amazon stored my credit card information then provided it to Audible so Audible could charge my card without my authorization or knowledge, seem illegal to me...

25. Laura P. on March 4, 2020 wrote:

I've had an amazon prime account for years. NEVER ordered, authorized or accepted an audible account. Was charged on Sunday, called, complained and had it refunded. Immediately after refunding, they charged my sons account (his debit card was removed from my account a couple of months ago.) Not only did they charge him, they obviously save debit cards that have been used (he bought a gift for his girlfriend which is the only reason his card was ever on my account) Investigation opened, they have so many complaints, class action law suits... Amazon needs to quit partnering with them. WATCH YOUR ACCOUNTS CLOSELY.

26. There are hundreds of complaints to the Better Business Bureau about Audible's unauthorized subscription and charges. *See* https://www.bbb.org/us/nj/newark/profile/digital-media/audible-0221-7000151/complaints. The following are just some of the complaints initiated

5

in 2022 alone:

27. On October 24, 2022, the following complaint was lodged:

My bank account continues to be charged for Audible even though I have never signed up for the service. Because we didnt sign up, we can provide none of the information Audible **************** asks for, so they say they cannot cancel the subscription. They want us to give them the email address to whomever has signed up using our bank information. None of our emails are recognized as the email linked to this mysterious account. They suggested we cancel our card, which we have done no fewer than three time, and we just got billed again for the service. We do not know what to do to stop this subscription we never signed up for. We cannot afford any extra charges to our account.

28. On October 17, 2022, the following complaint was lodged:

Audible has been charging a subscription fee to a credit card connected to our Amazon Prime account since November 2021. This is the third time since 2014 that we've caught a subscription started and charged without our knowledge. The company was not able to offer me an explanation as to how they claim the subscription was started. While they immediately refunded all of the fees charged in the past 12 months, I'm still concerned about the company practices in absence of an explanation as to how the subscription was begun.

29. On May 23, 2022, the following complaint was lodged:

I received my credit card account statement today May 23.There is a May 02 charge on it for ****** from Audible Amzn.com/**** **.I do not have an Audible membership and have not ordered anything from Audible. Audible is associated with Amazon so I called Amazon and they have promised to refund my credit card.

30. On March 24, 2022, the following complaint was lodged:

I have been paying about $15 per month for years for an Audible membership I do not remember signing up for. My husband and I use the same credit card and I thought it was something he had subscribed to. I found out at toward the end of **** that he had not subscribed! I never recall signing up and absolutely had never used it. I went onto Amazon's website and cancelled, but it said I should use the credits I had earned before I cancelled. I picked out some things and thought I did everything right to cancel. I discovered yesterday they never cancelled me! They have still been charging me a monthly fee! Shame on me for not looking at every line item on my credit card. Today I cancelled for sure, and did not opt to "use the credits I have

earned before canceling" for fear that I would again NOT BE CANCELLED! I checked email to be sure I got an email saying I had cancelled. I did, indeed, get that email. Then I searched on that email address to see when it was that I had cancelled (it looks like Nov or Dec of 2020). THEN, I kept scrolling down and it goes all the way back to 2011! I can't believe it! I am furious. Somehow, I was signed up for Audible in 2011, and have been paying about $15 a month since then! I consider it deceptive business practice to do this. I would like a refund or at least an Amazon gift card to make good on this. Even if I round down to 10 years and 0 months since this all started, at $15 a month, that's $1,800.

31.  On March 10, 2022, the following complaint was lodged:

I realized that I am being charged monthly for a service I have never signed up for on Audible.com. I think I may have signed up for a trial over FIVE YEARS ago-- the charges are the last four months. I called the company and was told my address didn't match a billing address they had for me, and that there was nothing they could do unless I could provide that address. This is completely absurd. Audible is guilty of fraud. I am looking for these charges to be stopped and my card refunded.

32.  On January 25, 2022, the following complaint was lodged:

My complaint regards a company called Audible. I happened to be looking at my Amazon subscriptions yesterday when I noticed I was being billed for this service. I guess Im remiss in not scrutinizing my monthly Chase-*********** statements more closely but I use the card almost exclusively for Amazon purchases. It looks like Ive been billed $14.95 a month for this service since May 2021. I dont recall ever signing up for even a free trial. Ive never used the service. Ive never listened to an audiobook. I recall Amazon notifying me periodically that I had Audible credits available but assumed they were a freebie for buying so much stuff. I immediately unsubscribed from the service once I discovered it but would appreciate reimbursement for what I consider to be fraudulent charges. I can scan and attach all my monthly credit card statements if needed but the charges should be easy enough to verify through the company, ********** or Amazon.

33.  Nonconsensual Enrollees did not know at the point of enrollment that they were being enrolled in an Audible membership. After the enrollment, Audible did not send Nonconsensual Enrollees clear and conspicuous communications about the Audible membership.

34.  Audible knew or should have known that consumers do not always carefully study their statements of purchase activity. Audible knew or should have known that many consumers

went through multiple billings cycles without using the Audible membership before they discovered their Nonconsensual Enrollment.

35. Audible made it exceedingly difficult not only for consumers to discover Nonconsensual Enrollment but also for them to cancel the Audible membership. Audible did not provide clear and conspicuous notice to Nonconsensual Enrollees about their enrollment to Audible or the monthly charges for the Audible membership. It could often take months before Nonconsensual Enrollees discovered that they have been enrolled, and it could then take months for Nonconsensual Enrollees to successfully stop their unwanted Audible membership.

36. Audible wrongfully enriched itself through Nonconsensual Enrollments over the course of several years.

37. Since at least 2018, Audible knew or should have known that Nonconsensual Enrollments were widespread, but Audible did not take any corrective action because such corrective action would negatively impact its subscriptions and revenue.

38. Rather than refund the entirety of the Audible membership charges for Nonconsensual Enrollments, Audible limited the amount of monthly charges it would refund or the time period for which it would refund, and/or required information that is difficult to provide. As a result, Audible charged Nonconsensual Enrollees for multiple months for services that they did not know about, want, or use.

39. Audible knows and can identify the Nonconsensual Enrollees who were charged monthly fees for their Nonconsensual Enrollment, yet Audible only refunded a fraction of the monthly membership fees paid by Nonconsensual Enrollees to Audible for services they never used.

40. Audible unjustly enriched itself millions of dollars over the course of many years

through Nonconsensual Enrollments.

41. That Audible knew or should have known about the Nonconsensual Enrollment is supported by the existence of a similar scheme promulgated by its parent company during the same time period whereby Amazon surreptitiously enrolled its customers in Prime memberships without their knowledge or consent. *See FTC v. Amazon.com, Inc.*, 2:23-cv-0932-JHC, 735 F.Supp.3d 1297 (W.D. Wash. 2024) (Chun, J.) (the "FTC Action").

42. After an extensive investigation, the FTC alleged, "Nonconsensual Enrollment is both so widespread and well-understood at Amazon that the company's internal documents are littered with references to 'accidental' signups." Amended Complaint in FTC Action (ECF No. 67) at ¶179.

43. A newsletter circulated within Amazon confirmed: "The issue of accidental Prime-sign ups is well documented .... Customers unknowingly become [Text redacted] because 1) they signed up accidentally and/or didn't see auto-renewal terms, 2) we didn't send them reminders or charge communications, and 3) they didn't check their card activity." Id.

44. Amazon was well aware that "[i]f customers unknowingly sign up, or are unaware of auto-renew, they can go through multiple billing cycles without using benefits." Id. at ¶180 (citing internal Amazon memo).

45. The FTC also alleged, "Amazon knows who nearly all Nonconsensual Enrollees are, yet refunds only those Nonconsensual Enrollees who eventually notice the charges and complain." Id. at ¶182.

46. Although the FTC Action pertained to enrollment of Amazon customers in subscriptions by Amazon in Prime, that case lends compelling support to the plausibility of Audible wrongfully retaining monthly fees for Nonconsensual Enrollments.

47. The FTC specifically alleged:

> Amazon operates other subscription services including Audible (audiobooks and podcasts), Kindle Unlimited (eBooks and digital media), Amazon Music Unlimited (streaming music), and Subscribe & Save (regularly-scheduled delivery of consumer goods). These other subscription services also use similar manipulative design elements that trick consumers into signing up and thwart their cancellation attempts.

*Id.* at ¶232.

**Plaintiff's Experience**

48. Plaintiff was enrolled in an Audible membership on or about October 16, 2020.

49. Ms. Sherk does not know the details of how she was enrolled in the monthly Audible subscription, but she knows that she never enrolled in an Audible membership through Audible's website or app.

50. She never affirmatively authorized Audible to enroll her in an Audible subscription, either as a "free" trial or as a paid membership.

51. Plaintiff never provided to Audible her personal and billing information.

52. Audible started charging Plaintiff $5.22 per month, starting on November 15, 2020, and continuing every month thereafter until April 15, 2021. On May 15, 2021, Audible increased the monthly charge to $8.39 and continued until June 15, 2021, for a total of $48.10. Audible charged Plaintiff the monthly subscription fee on the same payment method that Plaintiff had on file with Amazon.

53. Plaintiff did not know about the Audible subscription until she saw Audible's charges to her payment method on file with Amazon.

54. Plaintiff never used Audible's subscription services.

55. Because Audible did not provide Plaintiff with clear and conspicuous notice that she had been enrolled in an Audible membership, she was unaware that she was required to take

steps to cancel the subscription until after she had already been charged by Audible.

56. As a result, Plaintiff was monetarily injured in the amount of $48.10 that Audible charged her for services that she did not know about, did not want, and did not use.

## CLASS ALLEGATIONS

57. Plaintiff brings this action as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a nationwide class of the following:

> All persons in the United States who were charged by Audible for a Nonconsensual Enrollment during the relevant statute of limitations and who did not stream or download any content from Audible's website or apps after the free trial subscription period (the "Nationwide Class").

58. Plaintiff also brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following subclass:

> All persons in New York who were charged for a Nonconsensual Enrollment during the relevant statute of limitations and who did not stream or download any content from Audible's website or app after the free trial subscription period (the "New York Subclass").

59. The Nationwide Class and the New York Subclass are collectively referred to herein as the "Class."

60. Excluded from the Class are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and Defendant's legal representatives, heirs, successors, or assigns. Also excluded from the Class are any entity in which Defendant has or has had a controlling interest or any entity that has or has had a controlling interest in Defendant ("Controlling Interest Entity"), the Controlling Interest Entity's officers and directors, members of the immediate families of the officers and directors of the Controlling Interest Entity, and the Controlling Interest Entity's legal representatives, heirs, successors or assigns.

61. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class Members would use to prove those elements in individual actions alleging the same claims.

62. This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

63. The Class is so numerous that the individual joinder of all of its members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes that the total number of Class Members is in the tens of thousands and that members of the Class are geographically dispersed across both the United States and New York. While the exact number and identities of the Class Members are unknown to Plaintiff at this time, such information is known to Defendant or can be ascertained through appropriate investigation and discovery.

64. Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class. These common legal and factual questions do not vary from Class Member to Class Member, and they may be determined without reference to the individual circumstances of any Class Member.

65. Plaintiff's claims are typical of those of the Class because, like all members of the Class, she was unknowingly enrolled in and charged by Audible for a subscription service she did not want, request, or use, and she sustained injury from Defendant's in the form of monthly charges stemming from the Nonconsensual Enrollment.

66. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has

retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

68. This action is maintainable as a class action under the Federal Rules of Civil Procedure 23(b)(2) for injunctive relief because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

69. This action is maintainable as a class action under Federal Rules of Civil Procedure 23(b)(3) because the common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CAUSE OF ACTION
## UNJUST ENRICHMENT UNDER NEW JERSEY LAW
**(On Behalf of Plaintiff and Other Nationwide Class Members)**

70. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

71. Defendant unjustly enriched itself at the expense of Plaintiff and other Nationwide Class Members by retaining monthly charges from Nonconsensual Enrollees who did not know about, want, or use the Audible subscription.

72. Because Defendant knew or should have known that Plaintiff and other Nationwide Class Members were Nonconsensual Enrollees who never used the Audible subscription service, it would be against equity and good conscience to permit Defendant to retain the monthly fees that Plaintiff and other Nationwide Class Members paid to Defendant for the Nonconsensual Enrollment.

73. Plaintiff and the Nationwide Class Members seek restitution and disgorgement of the inequitably obtained monies from Defendant consisting of the monthly charges they paid to Defendant for the Audible subscription service that they did not know about, want, or use.

## CAUSE OF ACTION
## UNJUST ENRICHMENT UNDER NEW YORK LAW
**(On Behalf of Plaintiff and Other New York Subclass Members)**

74. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

75. Defendant unjustly enriched itself at the expense of Plaintiff and other New York Subclass Members by retaining monthly charges from Nonconsensual Enrollees who did not know about, want, or use the Audible subscription.

76. Because Defendant knew or should have known that Plaintiff and other New York

Subclass Members were Nonconsensual Enrollees who never used the Audible subscription service, it would be against equity and good conscience to permit Defendant to retain the monthly fees that Plaintiff and Other Class Members paid to Defendant for the Nonconsensual Enrollment.

77.     Plaintiff and the other New York Subclass Members seek restitution and disgorgement of the inequitably obtained monies from Defendant consisting of the monthly charges they paid to Defendant for the Audible subscription service that they did not know about, want, or use.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct its practices of retaining the monthly subscription fees paid by Class members for Nonconsensual Enrollment;

3. Awarding restitution and disgorgement of unjustly obtained monies, namely the monthly subscription fees paid by Class members for subscription services they did not know about, want, or use;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues.

Date: March 11, 2025

Respectfully submitted,

**REESE LLP**

By: /s/ Carlos F. Ramirez

Carlos F. Ramirez (NJ Bar No. 248022017)
cramirez@reesellp.com
Sue J. Nam (to be admitted *pro hac vice*)
snam@reesellp.com
Michael R. Reese (to be admitted *pro hac vice*)
mreese@reesellp.com
Kate J. Stoia (to be admitted *pro hac vice*)
kstoia@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**REESE LLP**

Charles D. Moore (to be admitted *pro hac vice*)
cmoore@reesellp.com
121 N. Washington Ave., 4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500

*Counsel for Plaintiff and the Proposed Class*